ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. |
| CHRISTOPHER BRANDON JUDGE (01)<br>RAQUELLE ANN JUDGE (02)<br>a/k/a "Raquelle Ann Renfro"<br>a/k/a "Raquelle Ann Farr" | 4:25-cr-226-Y |

### INDICTMENT

The Grand Jury charges:

At all times material to this Indictment:

#### General Allegations

*The Defendants and Related Entities*

1. Defendants **Christopher Brandon Judge (Christopher Judge)** and **Raquelle Ann Judge (Raquelle Judge)**, also known as Raquelle Ann Renfro and Raquelle Ann Farr, currently reside together in Denton, Texas and resided together in Ponder, Texas from approximately 2021 through 2022. On November 11, 2020, the defendants were married.

2. From on or about January 2017, through at least January 2019, defendant **Christopher Judge** performed residential design, construction, and remodeling work in Texas and was a managing member of a residential construction business named Judge Developments, LLC. From on or about December 2018, through November 2020,

Indictment - Page 1

defendant **Raquelle Judge** worked as a licensed realtor at Business A in Southlake, Texas.

3. Judge DFW LLC ("Judge DFW") was a limited liability company that was registered to do business in Texas, on or about August 7, 2020. Defendants **Christopher Judge** and **Raquelle Judge** were listed as its managing members. On or about June 24, 2022, Judge DFW forfeited its registration to do business in Texas as an LLC.

Count One
Conspiracy to Commit Wire Fraud
(Violation 18 U.S.C. § 1349 (18 U.S.C. § 1343))

4. Paragraphs 1 through 3 of this Indictment are realleged and incorporated by reference as though fully ser forth herein.

5. From in or about August 2020, and continuing until in or about January 2023, in the Fort Worth Division of the Northern District of Texas and elsewhere, defendants **Christopher Judge** and **Raquelle Judge** also known as Raquelle Ann Renfro and Raquelle Ann Farr, by and through the entity, Judge DFW, LLC ("Judge DFW"), did knowingly and willfully combine, conspire, confederate and agree with each other to engage in a scheme to defraud victims and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises with the intent to defraud those victims and, for the purpose of executing the scheme and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce certain signals and sounds in violation of 18 U.S.C. § 1343, that is, the defendants conspired to knowingly devise and execute a scheme to defraud and obtain money and property by means of materially false and fraudulent pretenses, representations and promises, as further described below, and in furtherance of that scheme caused the transmission of interstate wire communications between Texas and Illinois, and other states through electronic means (e.g., emails, text messages, and Facebook, Instagram and TikTok posts and messages), and banking transactions.

## The Object of the Conspiracy

6.   The object of the conspiracy was for defendants **Christopher Judge** and **Raquelle Judge**, collectively the defendants, by and through the entity Judge DFW, to defraud victims and enrich themselves by advertising to the public that they performed various services as a one-stop shop for custom home construction and interior design, to include: real estate sales, interior design, and custom home construction. To that end, the defendants:

   a.   Misrepresented their relevant experience and under bid projects to induce victims to enter into construction contracts;

   b.   Caused Judge DFW Design and Build Contracts ("Contracts") to be executed by victims and defendants promising that, among other things, the defendants would perform home construction projects in Texas for a fee;

   c.   Collected money from victims as installment payments to fund construction projects;

   d.   Failed to complete or meaningfully start the relevant construction projects;

   e.   Misrepresented to victims what their money had been or would be used for;

   f.   Used money from certain victims to fund partial work on other victims' projects without informing them; and

   g.   Stopped work on relevant projects and spent the remainder of victims' money on personal living expenses such as legal fees, Amazon purchases, personal credit card payments, mortgage payments, and tuition, among other things.

Manner and Means of the Conspiracy and the Scheme to Defraud

7. It was part of the conspiracy and scheme and artifice to defraud for defendants **Christopher Judge** and **Raquelle Judge** to advertise their business, Judge DFW, using Facebook, Instagram and TikTok posts and messages. The relevant posts and messages represented that they owned a custom home building and remodeling business. The defendants purported to offer architecture, construction, and interior design/décor services, and falsely represented that **Christopher Judge** was an architect.

8. It was further part of the conspiracy and scheme and artifice to defraud that once a potential customer contacted Judge DFW and expressed interest in building a home or remodeling, **Christopher Judge** would submit a below-market bid for the project, promising completion within four to six months. Once the customer agreed to hire the defendants, the customer would sign a contract and pay the defendants in multiple installments via wire transfer or check, thus causing interstate wire transmissions.

9. It was further part of the conspiracy and scheme and artifice to defraud for the defendants to maintain a Chase business bank account to give the appearance that Judge DFW was a legitimate business. Many victims were instructed to wire installment payment money to the defendants' Chase business account. Any checks were made payable to the business and deposited into the business account. Once the victims' money was deposited, however, the defendants often transferred the money into other jointly-held Chase bank accounts and used the money to perpetuate the scheme and for personal living expenses, including luxury items.

10. It was further part of the conspiracy and scheme and artifice to defraud for the defendants to do partial work on the construction projects to induce the victims to continue to make installment payments either by wire transfer or check. It was further part of the scheme for the defendants to make excuses and to assure the victims that problems and delays in construction would be corrected and that the project would be completed on time if the victims continued to make their installment payments.

11. It was further part of the conspiracy and scheme and artifice to defraud for the defendants to employ substandard subcontractors to do only minimal work and then to fail to pay the subcontractors that they hired for the projects.

12. It was further part of the conspiracy and scheme and artifice to defraud that, from at least in or about August 2020, and continuing until in or about January 2023, the defendants defrauded over 40 victims, who resided in six counties within the Northern District of Texas, related to at least 24 construction projects and caused a total loss of over approximately $4.8 million.

*Background Information and Bank Accounts*

13. It was further part of the conspiracy and scheme and artifice to defraud that on or about October 2, 2020, the defendants opened Chase account x6359 ("the primary Judge DFW operating account"), in their names as a business checking account for Judge DFW. Both defendants were account signatories.

14. It was further part of the conspiracy and scheme and artifice to defraud that defendants were owners and signatories of several other Chase bank accounts, all opened between October 2, 2020, and November 13, 2020, including: three corporate accounts,

the primary Judge DFW operating account, Chase account x1881, and Chase account x1873.

*The Victims*

15. It was further part of the conspiracy and scheme and artifice to defraud that defendants solicited clients for architectural and home construction services on the internet through Facebook, Instagram, and Tik Tok, and by word of mouth.

16. It was further part of the conspiracy and scheme and artifice to defraud that the defendants expressly told relevant victims, often in emails or text messages, that they were a one-stop-shop for custom home building, purporting to offer architecture, construction, and interior design/décor services. Defendants each falsely represented that **Christopher Judge** was an architect. As a result, in May 2022, the Texas Board of Architecture issued a formal warning to **Christopher Judge** and Judge DFW informing them both that they violated the Texas Administrative Code by referring to **Christopher Judge** as an architect and describing the business as "Judge DFW Architecture" in representations to the public because neither the individual nor the entity were properly registered as an architect or an architect business in Texas.

17. It was further part of the conspiracy and scheme and artifice to defraud that the during 2020, the defendants advertised their services on the "Alliance Working Moms" and "Moms of Southlake" Facebook pages.

18. It was further part of the conspiracy and scheme and artifice to defraud that the during the scheme, **Christopher Judge** advertised as **chrisjudge@judgedfw** and stated that he was as an architect, realtor, and builder.

Indictment - Page 7

19. It was further part of the conspiracy and scheme and artifice to defraud that the between on or about the dates shown in the chart below, the defendants attempted to execute contracts with each of the victims shown in the chart below, after having falsely represented to the victims that they were a full service architectural, construction, and interior design firm. The defendants started each of the construction projects listed in the chart below and accepted multiple installment payments but never completed them, as shown in the chart below:

| Victims | Location of Relevant Project in Texas | Approx. Contract Date | No. of Installment Payments | Approx. Date Defendants Stopped Working on Project | Approx. Total Amount of Payments to Defendants |
|---|---|---|---|---|---|
| Individual L1 & Individual L2 | Van Alstyne | 12/28/21 | 7 | 6/2021 | $225,505 |
| Individual R & Individual S | Justin | 6/16/21 | 13 | 9/2022 | $263,240 |
| Individual U1 & Individual U2 | Cleburne | 11/17/21 | 6 | 8/2022 | $198,510 |
| Individual Y1 & Individual Y2 | Euless | 4/1/21 | 7 | 12/23/21 | $196,705 |
| Individual Z1 & Individual Z2 | Decatur | 11/15/21 | 12 | 11/2022 | $364,310 |
| Individual M1 & Individual M2 | Stephenville | 3/14/2021 | 2 | 4/2022 | $51,995 |
| Individual P1 & Individual P2 | Decatur | 12/30/21 | 3 | 8/2022 | $125,310 |
| Individual E1 & Individual E2 | Decatur | 10/3/21 | 10 | 11/2022 | $237,530 |

20. It was further part of the conspiracy and scheme and artifice to defraud that for each relevant project, defendants would secure money from victims, as follows:

    a. **Raquelle Judge** scheduled an in-person or online-remote meeting between the victims and both defendants;

    b. During the meeting, **Raquelle Judge** explained the construction and design contract, that a $10,000 deposit was required, and **Christopher Judge** and the victims executed the Contract; and

    c. **Raquelle Judge** emailed the signed contracts to the victims for their records.

21. It was further part of the conspiracy and scheme and artifice to defraud that once the relevant victims paid an initial deposit to the defendants via check or wire transfer, **Christopher Judge** prepared architectural plans and presented them to the victims. The victims sometimes requested changes to the plans. After the architectural plans were finalized, **Raquelle Judge** helped the victims select the design materials and determine anticipated costs. To that end, **Raquelle Judge** electronically sent photos and price sheets to the victims.

22. It was further part of the conspiracy and scheme and artifice to defraud that after defendants began each project, eventually each relevant client began to question the defendants regarding project delays and incompletion. In response, **Christopher Judge** made excuses for delays in phone calls and text messages, frequently by telling the victims that continued installment payments would move the projects along.

23. It was further part of the conspiracy and scheme and artifice to defraud that there were additional projects (not listed in the chart above) during which victims were defrauded and the defendants followed the same general pattern of conduct. For each

project: the defendants submitted a bid that was substantially lower than others received by the victim; the defendants and additional victims then entered a contract; the victims made installment payments to the primary Judge DFW operating account; the defendants never completed (or meaningfully started) any of the projects; and finally the defendants ceased communications with the victims after substantial contract payments were made to the defendants.

*Disposition of Funds*

24. It was further part of the conspiracy and scheme and artifice to defraud that from October 2020, to January 2023, the defendants deposited at least approximately $4,827,083 into the primary Judge DFW operating account.

25. It was further part of the conspiracy and scheme and artifice to defraud that the defendants commingled victims' installment payments in the primary Judge DFW operating account. Frequently, money from a victim's installment payments were used by the defendants to purchases construction materials for unrelated construction projects.

26. It was further part of the conspiracy and scheme and artifice to defraud that from October 2020, to January 2023, as part of the scheme, while receiving Judge DFW installment payments, the defendants spent the following on expenses unrelated to construction project materials:

    a. $96,000 on the construction of their personal residence;

    b. $65,000 on civil legal fees and other lawsuit costs;

    c. $38,000 on rent and mortgage payments; and

    d. $10,000 on plastic surgery.

Indictment - Page 10

27. It was further part of the conspiracy and scheme and artifice to defraud that **Christopher Judge** and **Raquelle Judge** fraudulently obtained over approximately $4.8 million dollars from over 40 victims on at least 24 construction projects, none of which the defendants completed or intended to complete.

28. It was further part of the conspiracy and scheme and artifice to defraud that **Christopher Judge** and **Raquelle Judge** received a total of 424 citations from code enforcement for city violations on projects they were working on in Runaway Bay, which is in Wise County, Texas.

All done in violation of 18 U.S.C. §§ 1349, 1343.

## Counts Two to Seven
## Wire Fraud
(Violation 18 U.S.C. §§ 1343 and 2)

29. Paragraphs 1 through 3 and 6 through 28 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

30. Beginning in or about August 2020, and continuing until in or about January 2023, in the Fort Worth Division of the Northern District of Texas and elsewhere, defendants **Christopher Judge** and **Raquelle Judge**, by and through the entity, Judge DFW, devised, intended to devise, and aided and abetted others in devising, a scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, representations, and promises, as described in paragraphs 6 through 28 above.

31. On or about the dates set forth below, in the Fort Worth Division of the Northern District of Texas and elsewhere, in furtherance of, and for the purpose of executing such scheme and artifice to defraud, defendants **Christopher Judge** and **Raquelle Judge** transmitted and caused to be transmitted by means of wire communications in interstate commerce the signals and sounds set forth below:

| Count | Victim Making Installment Payment | Description of Wire Transmission | Date of Wire Transmission | Amount of Wire Transmission |
|---|---|---|---|---|
| Two | Individual L1 & Individual L2 | Transfer of funds into the primary Judge DFW operating account at Chase Bank in Texas caused electronic transmission of transaction information from Texas to Chase Bank server in Illinois | 6/14/21 | $96,306.35 |
| Three | Individual M1 & Individual M2 | Deposit of Wells Fargo Bank Cashier's Check No. 77605422 into the primary Judge DFW operating account caused electronic image transmission by Chase Bank in Texas to Chase Bank server in Illinois | 11/8/21 | $41,994.06 |
| Four | Individual U1 & Individual U2 | Transfer of funds into the primary Judge DFW operating account at Chase Bank in Texas caused electronic transmission of | 1/3/22 | $17,246.25 |

|  |  | transaction information from Texas to Chase Bank server in Illinois |  |  |
|---|---|---|---|---|
| Five | Individual P1 & Individual P2 | Transfer of funds into the primary Judge DFW operating account at Chase Bank in Texas caused electronic transmission of transaction information from Texas to Chase Bank server in Illinois | 8/22/22 | $75,145.92 |
| Six | Individual E1 & Individual E2 | Transfer of funds into the primary Judge DFW operating account at Chase Bank in Texas caused electronic transmission of transaction information from Texas to Chase Bank server in Illinois | 9/23/22 | $29,060.50 |
| Seven | Individual Z1& Individual Z2 | Transfer of funds into the primary Judge DFW operating account at Chase Bank in Texas caused | 10/24/22 | $27,299 |

**Indictment - Page 14**

|  |  | electronic transmission of transaction information from Texas to Chase Bank server in Illinois |  |  |

All done in violation of 18 U.S.C. §§ 1343 and 2.

## NOTICE OF FORFEITURE
(18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 21 U.S.C. § 853(p))

32. Pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c) and upon conviction of any offense listed in Counts One through Seven of this Indictment, defendants **Christopher Judge** and **Raquelle Judge** shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such violations.

33. Property subject to forfeiture includes, but is not limited to, a "money judgment" in the amount of U.S. currency constituting the gross proceeds traceable to the offense, $4,827,083.

34. If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

A TRUE BILL.

_____
FOREPERSON

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

_____
MARK MCDONALD
Assistant United States Attorney
Virginia Bar No. 72198
801 Cherry Street, Suite 1700
Fort Worth, TX 76102
Telephone: (817) 252-5272
mark.mcdonald3@usdoj.gov

**Defendants on Pretrial Release**

---

_____
UNITED STATES MAGISTRATE JUDGE
Magistrate Court No.:   4:25-MJ-552-BJ

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

THE UNITED STATES OF AMERICA

v.

CHRISTOPHHER BRANDON JUDGE (01)
RAQUELLE ANN JUDGE (02)
a/k/a "Raquelle Ann Renfro"
a/k/a "Raquelle Ann Farr"

INDICTMENT

18 U.S.C. § 1349 (18 U.S.C. § 1343)
Conspiracy to Commit Wire Fraud
Count 1

18 U.S.C. §§ 1343 and 2
Wire Fraud
Counts 2 – 7

18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 21 U.S.C. § 853(p)
Forfeiture

A true bill rendered

_____
DALLAS                                                    FOREPERSON

Filed in open court this __3__ day of September, 2025.